ST. PAUL & MINNEAPOLIS TRUST COMPANY v. H. K. HARRISON.
and Others.[2]

April 30, 1896.

Nos. 9818—(95).

Contract—Interpretation—Parol Evidence.
   . The plaintiff's assignor sold a stallion for the purpose of begetting colts;.
   and warranted him to be a "breeder." *Held*, that it was competent to per-
   mit witnesses familiar with the business of breeding and raising stock to·
   testify as to how the term "breeder" was used and understood by farmers,.
   horsemen, and stockmen engaged in such business.

Appeal by plaintiff from an order of the district court for Grant
county, C. L. Brown, J., denying a motion for a new trial. Af-
firmed.

[1] Reported in 66 N. W. 1151.          [2] Reported in 66 N. W. 980.

*Mason & Hilton*, for appellant.
*C. J. Gunderson*, for respondents.

BUCK, J.   On May 12, 1891, Webber & Matthews, payees in the note sued upon, sold to the defendants a stallion for the sum of $1,800, and, in payment therefor, took from the defendants three nonnegotiable notes, of $600 each, drawing interest at the rate of 6 per cent. per annum, payable, respectively, as follows:   December 1, 1892; December 1, 1893; and December 1, 1894.   Before the maturity of the note first due, and herein sued upon, the same was, for value, sold and transferred to the plaintiff, who brings this action.   The defendants made a payment of $133.33 upon this note before its transfer to plaintiff.   Upon nonpayment of the note, the plaintiff brought this action upon it against these defendants, and they answered, setting up a warranty, which was in the following words:

"Fergus Falls, Minn., May 12th, 1891.

"We hereby guaranty the imported English shire stallion Stuntney Matchless to be a breeder, provided he is properly fed, handled, and cared for.                    [Signed] E. J. Webber.
"J. V. Matthews."

The defendants further allege a breach of the warranty, in this: that the stallion was worthless as a breeder at the time of the sale and execution of the warranty, and demanded that the damages thereby sustained should be set off against any amount which might be found due upon the note sued upon.   The jury found a verdict in favor of the defendants.

Upon the trial of the action, a controversy arose as to the meaning of the word "breeder," as used in the warranty, it appearing that 36 mares were served by this stallion during the season of 1891, and that only 12 of them had colts.   The defendants called several witness, who testified that they were familiar with the management of stallions; that, among horsemen, stockmen, and farmers, the word "breeder," when applied to a stallion, was one understood by them to be capable of producing 60 to 65 per cent. foals from the number of mares served.   They also testified that they understood this word in the same sense.   The admission of this testimony is alleged to be error.

The facts show that the stallion was sold and purchased for a specific purpose, viz. for the purpose of begetting colts. As an inducement for the defendants to make such purchase, the payees in the note guarantied or warranted that the stallion was a "breeder." From the face of the instrument, a court or jury would probably find it difficult, if not quite impossible, to determine the precise meaning of the term "breeder" as there used. Hence, while the parties to the contract might fully understand the meaning of the term, and unquestionably did understand it, yet, when such a contract is sought to be enforced in a judicial proceeding, it is competent to permit witnesses familiar with the meaning of the term, as used in the business to which it is applicable, to testify as to such meaning, and as to how those who employ the term use and understand it. This is not varying the terms of a written instrument, but is a mode of ascertaining the intention of the parties at the time when they entered into the contract. Persons, such as farmers, horsemen, and stockmen, engaged in breeding and raising stock, doubtless well understood the signification of the term "breeder," as used in this guaranty; and it would not, therefore, be uncertain or ambiguous as to them. The defendants bought this stallion for a "breeder," and the fair inference is that they understood the business for which he was bought, and the meaning of the term used in the warranty. Some of the defendants so testified. It is a reasonable and safe rule to permit witnesses who fully understand the meaning of the term used in a specific business to explain it to the jury or court engaged in the trial where such questions or issues are involved.

Upon the question of the value of the stallion we are not so well satisfied with the evidence. It is meager and unsatisfactory. There are some fifteen defendants, and only one testified upon this point. In their answer, they admit its value to be $300 and that they made a tender of payment of $420 upon this note, which they allege that they have been willing at all times since December 19, 1892, to pay, and that when they verified their answer, August 31, 1893, they were still willing to pay this amount. As they had already paid $133.33, it will be seen that, considerably more than two years after the purchase of the stallion, they were still willing to allow a payment in all of $553.33 on this $600 note. And this

acknowledgment was made after they had the service of the horse for the seasons of 1891, 1892, and 1893.     At least, the presumption is that they had him during all that time, and had him at the time of the trial, for there is no evidence that they ever sold him, or that he died.     That they should still keep this stallion during all of this time, and make the admissions to which we have referred, and then only one of the fifteen defendants testifies upon the question of value, is a very significant fact, and one which makes the testimony very unsatisfactory.

It is true that, at the close of the plaintiff's testimony, the defendants' counsel asked leave of the court to amend the answer, and allege that the stallion was worthless as a breeder, which amendment was allowed by the court, although it does not appear whether this amended answer was again verified by the defendants.     If we presume that they did so, still it is a notable fact that only one of them testified as a witness to the value of the stallion. Nevertheless, it appears that the plaintiff did not even cross-examine this witness upon the question of value, nor did he introduce any testimony in his own behalf upon the subject.     The testimony of the defendants' witness who testified in regard to value is susceptible of different meaning; and, while it is therefore quite unsatisfactory, the jury doubtless understood it in the light most favorable to the defendants; and we conclude not to disturb the verdict, especially as the two other notes are still outstanding, over which, if litigation shall arise, more satisfactory evidence may, perhaps, be presented by one party or the other.

The order denying the motion for a new trial is affirmed.