(113 N. W. 1034.)

---

CONTINENTAL HOSE COMPANY No. 1, A CORPORATION, v. THE CITY OF FARGO, A MUNICIPAL CORPORATION.

Opinion filed Jan. 13, 1908.

**Municipal Corporations — Fire Department — Insurance Premiums.**

1. In an action by a fire company to recover from a city its proportionate share of the 2 per cent of the premiums received upon fire policies, issued on property in such city, under section 2968, Rev. Codes 1905, the plaintiff must show affirmatively that it had the management of at least one steam, hand, or fire engine, hook and ladder truck, or hose cart, during the time wherein it claims to be entitled to such premiums.

**Same.**

2. Where the officials of the city fire department have sole charge of all fire apparatus for use at fires, all of which was owned by the city, and the duties of the other members of the fire department simply require them to repair to the fire on alarm, and to aid in extinguishing it, the department as companies has no such management of the apparatus named as is contemplated by section 2968, Rev. Codes 1905, to entitle it to a share of the fund received from insurance premiums.

**Same — Paid Department.**

3. In this case it is shown six members of the fire department of the defendant city were paid annual or monthly salaries, and all other members of the department were paid in accordance with the

ordinance of the city; $1 for the first hour, and 50 cents per hour for all subsequent time in the daytime, and 75 cents in the night-time, for time spent in actual attendance at fires, and that the amount so paid by the city to its fire department for a period of about 18 months, the time involved in this action, was over $6,000. *Held,* that such department was a paid department within the meaning of section 2968, Rev. Codes 1905.

### Statutes — Construction — Meaning of Words.

4. When a technical meaning of a word or term is relied upon to sustain the plaintiff's cause of action, and such meaning is not commonly known or understood, and is not given in dictionaries, encyclopedias, or legal works, and the word or term has a meaning commonly known and understood, the burden is upon the plaintiff to show by competent evidence the technical meaning of such term or word, and in the absence of such showing it will be presumed to have been used in the statute in the sense in which it is ordinarily and commonly used and understood by people in general.

FISK, J., dissenting.

Appeal from District Court, Cass county; *Pollock, J.*

Action by the Continental Hose Company against the City of Fargo. Judgment for plaintiff, and defendant appeals.

Reversed.

*W. C. Resser,* City Attorney, and *Engerud, Holt & Frame,* for appellant.

*Barnett & Richardson,* for respondent.

SPALDING, J. This action was brought by Continental Hose Company No. 1, a corporation, against the city of Fargo, to recover the sum of $1,060, and interest, claimed to be due it from said city under the provisions of article 9, c. 32, Pol. Code 1905, being sections 2966 to 2971, inclusive, Rev. Codes 1905. It is claimed this is due as its share of the 2 per cent of the insurance premiums collected within the city of Fargo, under the provisions of the law referred to on the 7th day of June, 1904, and the 7th day of June, 1905. It is unnecessary to set forth the pleadings. The case was tried before the court without a jury, and the court found that the plaintiff was a corporation, and that more than five years prior to the commencement of this action the plaintiff was a volunteer fire company and offered its services to the city, which were accepted,

and during all the time since has performed and rendered to the city of Fargo its services as a volunteer fire company, and has had the management and control of one steam engine, one hook and ladder truck, and one hose wagon, and that it is a member in good standing of the North Dakota Firemen's Association; that it, with two other companies, for more than eight months prior to the 31st of October, constituted the fire department of the city of Fargo, and other facts which are not material to the consideration of the case in this court. As conclusions of law the trial court found that the fire department of the city of Fargo up to the 20th of July, 1904, was an organized volunteer fire department, composed of three volunteer fire companies, of which the plaintiff was one, and that it was entitled to receive its proportionate part of the insurance premium moneys apportioned to the city of Fargo, under and by virtue of article 9, c. 32, Rev. Codes 1905, and entered judgment for the amount claimed in the complaint. From such judgment the defendant appeals.

Under this appeal only two questions are necessary to be determined: First, did the plaintiff during the time in question have the management and control of at least one steam, hand or fire engine, hook and ladder truck, or hose cart? Second, was the fire department of the city of Fargo, during such time, a paid fire department? If either of these questions cannot be answered in the affirmative on the evidence submitted, the plaintiff is not entitled to recover. Before referring to the evidence it may not be improper to consider the evident, and ,we think, conceded, object of the statute in question. It is known by every one that in villages and small towns public-spirited citizens, and particularly public-spirited young men, unite together and form fire companies or fire departments for the purpose of protecting and saving property in case of fire. In the smaller places the individuals composing them almost invariably contribute their services without compensation from the municipality. In some places the municipality owns any equipment or apparatus used, while in others the fire department owns it. The men constituting the fire department in such cases almost invariably have control, care and management of the engines, trucks and other apparatus provided for used in the extinguishment of fires. As the municipality increases in size, and the interests become more varied, exposure to fire greater, and the number of risks greatly increased, there is a corresponding increase

in the number of fires, until service as firemen requires so frequent attendance at all times of day and night as to interfere with their avocations, and renders such service burdensome. If the municipality continues to increase in size, it finally reaches a point where service becomes so burdensome that the taxpayers conclude that they should not be rendered without compensation, and that the property owners should contribute thereto. When this point is reached, and the city pays the firemen for their services, the department is said to be a paid fire department. Prior to that time it matters not what it is called. The plaintiff in this case assumes that prior to that time, and even afterward, the department may be a volunteer fire department, and that a volunteer department cannot be a paid fire department, even though paid for its services; but the statute nowhere mentions a volunteer fire department or volunteer firemen, so we are not called upon to decide the meaning of the term "volunteer," when applied to this department. On this phase of the case it is only necessary to determine whether the fire department of the city of Fargo, during the time in question, under the ordinance hereinafter to be referred to, was a paid fire department. We shall, however, refer later to the meaning of the term "volunteer." Article 9, c. 32, Pol. Code (Rev. Codes 1905, sections 2966-2971), provides that on compliance with certain conditions an amount equal to 2 per cent of the premiums received upon the policies issued on property in any city, town or village, and when received by the treasurer of the same, shall be paid over to the treasurer of each separate, organized fire companies, or company, in equal proportion, having the management of at least one steam, hand or fire engine, hook and ladder truck, or hose cart, but with this proviso, that in cities, towns and villages having a paid fire department, the amount so received shall be retained by the municipal treasurer to be disbursed by the governing power in maintaining said fire department. We are unable to see but one purpose in requiring this contribution from insurance companies. It is important to all such companies that all property possible be saved from fire, and that the greatest possible effort be exerted in the prevention of fires, and in preventing them from spreading, and in other ways, and it may be assumed that the state, and the insurance companies as well, have recognized as a fact that compensation for the time spent in fighting fires will increase the interest of the firemen, and serve as an incentive to them to exert themselves to their utmost in such

capacity, and that it is wise policy on the part of both the state and the companies to make provision for compensating them for services, and to this end the law in question was enacted.

It appears that prior to the approval of the ordinance of the city of Fargo, approved February 17, 1903, there had existed in that city a board of control, composed of members of the different fire companies, which board had the control of all the fire apparatus and machinery of the city, and that since that date it has been housed in a building provided by the city and has been under the control and management of salaried members of the fire department, and that the companies composing such department have nothing to do with the control and management of the apparatus, neither have the members of the different companies anything to do with it. Their duty has been to obey the orders of the chief when at fires. The officials of the fire department, it is true, have been taken from the members of the different companies, but we are unable to discover or conclude that that gives the company or any of them the control of the apparatus. The officials are in control and management of it, not as members of the fire department, but as officials of the city of Fargo, as shown by the evidence, and under the law, James W. Sutherland, chief of the fire department, testifies that the drivers of the different rigs, meaning the drivers of the different engines, carts, etc., had the care of the apparatus and equipment of the fire department, and that no one else had the handling of the apparatus, and that the monthly salaries of these drivers was $60 each, during the time in question, and that since December, 1903, when the steam engine was purchased, an engineer of such engine has received a monthly salary of $75. Doubtless there were two objects in requiring companies receiving insurance money to have the control and management of the apparatus used. Such a requirement would have a tendency to insure the money going to bona fide companies organized and actually serving in the capacity of firemen, and it would also furnish something of an incentive to the companies, and their members, to get such apparatus on the ground speedily in case of fire. When the engines and other apparatus are cared for, managed, and controlled by paid officials of the city, such inducement is no longer necessary. As to these facts we discover no conflict in the evidence, and we are unable to conclude that during the time mentioned the plaintiff has had the management and control of either a steam, hand or fire engine,

hook and ladder truck or hose cart, as required by the law referred to, as a prerequisite to its receiving any part of the insurance premiums.

The second question demanding an answer is whether the fire department was a paid department. The evidence shows without controversy the facts as to this. About six members were paid either by annual or monthly salaries. The members of the department numbering about fifty men received during the time covered by this action pay for services amounting to $6,196.53, under the terms of the ordinance of February 17, 1903, which provided that all firemen attending fires in the city of Fargo between the hours of 7 a. m. and 7 p. m. should receive for their services $1 for the first hour, and 50 cents for each succeeding hour, and while in actual attendance at fires between the hours of 7 p. m. and 7 a. m. $1 for the first hour, and 75 cents for each succeeding hour. The city of Fargo appropriated for the fiscal year commencing September 1, 1903, for the expense of such department, the sum of $8,115, which included the salaries of the officers and men, supplies, fire alarm, and hose, and tax was levied for such appropriation, and the expenditures during such time included the sum of $6,196.53, hereinbefore referred to.

It is argued in respondent's brief that because the title and some of the subtitles to the ordinance referred to them as volunteer firemen they were not paid firemen. We are unable to appreciate the distinction. The law makes no reference to volunteer companies or firemen. And taking the words "pay" or "paid" in their ordinary meaning, they are certainly paid firemen. "Paid" is defined by Webster as "receiving pay; compensated; hired." "To pay" is defined by the Century and Standard Dictionaries as, "To deliver that which is or is regarded as the equivalent or compensation to, as to an employe or a creditor for services or goods; to remunerate; to recompense; to give as pay;" "to requite; remunerate; reward, as to pay workmen or servants." After a careful examination of authorities, including encyclopedias, we are unable to discover any such distinction between volunteer and paid firemen as is drawn by the respondent.

The respondent contends that the distinction lies in the fact that paid firemen are in the sole employment of the city, and are compelled to attend fires, while volunteer firemen may be engaged in other avocations, and their attendance at fires is voluntary, and, in

effect, that the question of compensation for their services has no application in determining whether the plaintiff comes within the terms of the statute. The definition of "volunteer," cited by respondent from Webster's Dictionary, is "a person who enters into service of his own free will," and that they sometimes serve gratuitously is clearly as applicable to paid firemen as to members of a volunteer fire department. The members of a paid fire department have entered into the service of the city of their own free will. The city does not draft them, and their entering into the service of the city is not compulsory. A person who gives his services without any express or implied promise of remuneration in return is called a volunteer, and is entitled to no remuneration whatever for his services. Black's Law Dictionary, 1224. We are of the opinion that a paid fireman is one who receives from the municipality which he serves fixed compensation for the services rendered. We are also of the opinion that it was not intended by the legislature to authorize the payment of this fund to firemen or to a department, whether consisting of companies or men already paid for their services by the city; but that in such case it was intended, as the express language of the statute indicates, that it should go into the city treasury to assist in reimbursing the city for its outlay in maintaining and compensating the department. It was not intended to duplicate their pay. In effect the contention of the respondent is that the term "paid firemen" or "paid fire department" has a meaning unknown to the public in general, but understood by the members of the fire department as applicable only to those who are under legal obligation to attend fires in the capacity of firemen. If it has any such meaning, it is clear to us that it is not so generally recognized, and that the knowledge of this meaning is confined to those in the vocation of firemen. No testimony was offered to show the meaning of the term, and in the absence of evidence that it has a technical meaning, and of what such meaning is, it must be construed as having the meaning ordinarily and usually accepted by the public at large. If it has a technical meaning, or a meaning applicable to firemen as distinguished from its common meaning, the burden was on the plaintiff to show it as a fact. The burden is on the plaintiff to show that the word has a technical meaning, and to show what that meaning is, and that it was intended that it should be construed in a technical sense (Mansell v. Reg., 92 E. C. L. 109), and this is especially true where

the court have no knowledge of such meaning being given to the term or word, and when none is to be found in the text-books, reports or encyclopedias. Usage and custom and technical terms seem to be classed together in this respect, and all the courts place the burden of proof upon the party seeking to establish the meaning. 3 Enc. of Evid. 956. In St. Paul & M. Trust Co. v. Harrison, 64 Minn. 300, 66 N. W. 980, the Supreme Court of Minnesota, in construing a contract of warranty on the sale of a stallion, which was warranted to be a breeder, evidence having been admitted to show what the meaning of the word "breeder" was among horsemen, as applied to a stallion, said: "From the face of the instrument the court and jury would probably find it difficult, if not quite impossible, to determine the precise meaning of the word 'breeder' as there used, and held that it was competent, even though both parties understood its meaning, to permit witnesses familiar with the meaning of the word as used in the business to which it is applicable to testify as to such meaning to show how those who employed the term used and understood it." In Lowe v. Lehman, 15 Ohio St. 179, in construing a contract relating to brick to be furnished by the thousand, the Supreme Court approved instructions to the jury that, in the absence of custom, the words "thousand brick" must be taken in the ordinary sense, and only the actual number laid in the walls must be allowed for, to be ascertained by actual count, or by some method giving the actual number as nearly as possible; that usage, in order to give a different meaning to the term, must be shown to have been reasonable, certain, uniform, and generally acquiesced in and understood, by the community. In Wood v. Allen, 111 Iowa, 97, 82 N. W. 451, the Supreme Court of Iowa in passing upon the rejection of evidence to show the meaning of the term "dry goods," and as to whether a contract of sale of a stock of dry goods included certain articles, says: "Custom or usage of the term would have shed much light on this matter, and without such evidence the jury had no certain guide by which to determine the issues." In Maurin et al. v. Lyon, 69 Minn. 257, 72 N. W. 72, 65 Am. St. Rep. 568, the Supreme Court of Minnesota held in construing a contract for the purchase and sale of wheat, which contract contained several abbreviations known to the trade, evidence was competent to show the meaning of such abbreviations as used in the trade. In discussing the subject of usage in Walls v. Bailey, 49 N. Y. 464, 10 Am. Rep. 407, this court says:

"Not only the existence of such usage, but whether the knowledge of it exists in any particular case, is a question of fact for the jury. Of course, then, it is to be established or negatived in all its essentials, as well as to knowledge as to any other, by the same character and weight of evidence as are necessary to maintain the other allegations of fact." And in Bodfish v. Fox, 23 Me. 90, 39 Am. Dec. 611, the court says, in speaking of the subject of usage: "There must be proof that the contract had reference to it or proof arising out of the position of the parties, their knowledge of the usage, or other circumstances from which it may be inferred or presumed that they had reference to it." We see no other method of informing the court or jury as to the meaning of the term. If such evidence is not requisite, the courts and juries must act in the dark, or go outside the record made, or accept statements of counsel as to its meaning—and in this case the counsel disagreed on this point—or they will be compelled to adopt the meaning of the term as generally understood.

It cannot be questioned that the generally understood meaning of the word "paid" as applied to those who render service to others is that they have received compensation for such services. We are of the opinion that the evidence shows affirmatively that the plaintiff was not entitled to maintain this action, for the reason that it did not have the management or control of either a steam, hand or fire engine, hook and ladder truck or hose cart, and that the payment to every man in the fire department, performing any service therein of a certain fixed salary, either by the year, month or hour, as required by the city ordinance, constitutes a paid fire department. Other points discussed in the briefs are deemed immaterial.

The judgment of the district court is reversed.

Morgan, C. J., concurs. Fisk, J., dissents.