STATE *Ex Rel.* ROY McLAUGHLIN

*v.*

HONORABLE BEN F. MORRIS, *Mayor, Etc.*

(No. 9803)

Submitted January 9, 1946. Decided February 19, 1946.

*Arthur B. Hodges* and *Harold H. Neff*, for petitioner.

*John E. Amos*, for respondent.

LOVINS, JUDGE:

In this original mandamus proceeding Roy McLaughlin, relator, seeks a writ requiring Ben F. Morris, Mayor of the Town of Marmet, to appoint one member of a civil service commission, as provided in Section 2, Chapter 60, Acts of the Legislature, Regular Session, 1933.

The Common Council of the Town of Marmet on July 24, 1944, passed an ordinance establishing a fire department for the town. Sections 2 and 3 of the ordinance, as originally adopted, authorized the appointment of a fire chief, assistant fire chief, one fire truck operator to be known as "captain", and members of the fire department. By an amendment, adopted July 23, 1945, it was provided that the fire chief should be appointed by the mayor to serve at his will and pleasure, and that the fire chief may be summarily dismissed by the mayor. It was further provided by the amendment that the assistant fire chief and fire truck operator should be appointed by the mayor and fire chief, to serve at the will and pleasure of the mayor, and that the members of the department should be selected by the mayor from a list of names submitted by the fire chief and approved by the common

council of the town. The ordinance fixed the salary of the fire chief at twenty-five dollars a month, the assistant fire chief at ten dollars a month, and the fire truck operator, or "captain", at five dollars a month. Compensation of members of the department was fixed at two dollars fifty cents for the first hour and one dollar for each additional hour thereafter for all fire alarms answered by them except alarms for the purpose of training. Other sections of the ordinance provide for group insurance, repayment for loss* or damage to personal property, annual expenses for the fire chief and, in a general way, for the eligibility of appointees, but such provisions are of no materiality herein. The last section of the ordinance provides that: "Any word, phrase, sentence, paragraph or section contained in this ordinance, that is in conflict with any ordinance, now in effect, or Law of the State of West Virginia is hereby declared void." Following the adoption of the ordinance, officers and members of the fire department of the Town of Marmet seem to have been paid in accordance with its provisions until July 16, 1945, at which time the Common Council of the Town of Marmet suspended the payment of salaries of the chief, assistant chief and captain. It is alleged on information and belief that the members of the fire department have been paid, but respondent in his answer alleges that no compensation has been paid to any officer or member of the fire department since July 1, 1945, and that the town now has a volunteer fire department. The original appointments of officers and members of the fire department seem to have been made without regard to Chapter 60, Acts of the Legislature, Regular Session, 1933.

Relator contends that said Chapter 60 provides the exclusive method of appointment for all personnel of a "paid fire department", and consequently that part of the ordinance giving the mayor power of appointment is of no effect. Respondent asserts that the fire department established by the ordinance is a volunteer fire department; that its members are not professional fire

fighters, as contemplated by the statute; and that the provisions of the ordinance govern rather than those of the statute.

We make no inquiry whether the Common Council of the Town of Marmet legally suspended the pay of the officers of the fire department. It is sufficient to say that the salaries of the officers of the fire department of that town had been suspended when this proceeding was instituted. Payment of compensation to members of the fire department is alleged by relator, but is controverted by respondent, and no proof is offered to resolve this issue. The admission by relator as to pay of officers and the lack of proof as to pay of members militates against relator's contention and tends to show that, as a matter of fact, there was no paid fire department in the Town of Marmet at the time this proceeding was instituted.

A civil service commission passes on the eligibility of persons to be appointed to positions in a paid fire department, and consists of three commissioners, one to be appointed by the mayor of the municipality, another to be appointed by the local trades board or by the paid international association of fire-fighters, and a third to be appointed by the local chamber of commerce. Section 2, Chapter 60, Acts of the Legislature, Regular Session, 1933. The purpose of this proceeding is to compel the appointment of one commissioner, and we make no conjecture whether the other two will or will not be appointed. The appointment of only one member of the civil service commission for the Town of Marmet would be a futile act, as he would have no power to perform the duties imposed by the statute on a commissioner. Nothing appears in this record to justify a statement that there is a local trades board or a local chamber of commerce in the Town of Marmet. The issuance of the writ herein and compliance with its mandate without the appointment of another commissioner would be unavailing. *Brannon* v. *Perky*, 127 W. Va. 103, 31 S. E. 2d 898; *Taylor* v. *Board*, 119 W. Va. 378, 193 S. E. 575.

Notwithstanding the allegations of the petition and the return to the rule with reference to the pay of the officers and members of the fire department of the Town of Marmet, and the possibility that the writ would be futile if awarded, we prefer to rest our decision on this question: Do the provisions of Chapter 60, Acts of the Legislature, Regular Session, 1933, apply to the fire department established by the Common Council of the Town of Marmet? If the statute is applicable, it is the duty of the mayor to appoint a member of the civil service commission. *Prichard* v. *Devan,* 114 W. Va. 509, 172 S. E. 711. The pertinent parts of Chapter 60, Acts of the Legislature, Regular Session, 1933, are: "Appointments to and promotions in all paid fire departments of cities of any population whatsoever shall be made only according to qualification and fitness to be ascertained by examinations * * * no person shall be appointed * * * as a paid member of said fire department * * * of any city in the State of West Virginia, in any manner or by any means other than those prescribed in this act." Section 1, Chapter 60, *id.* "* * * There shall be a 'civil service commission' in each city or incorporated town having a fire department, any of the members of which are paid by said city or municipality. * * *." Section 2, Chapter 60, *id.* "* * * It is understood and intended by this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, firemen or other employees of said fire departments in all cities and municipalities wherein the members of the fire department are paid." Section 19, Chapter 60, *id.*

Examination of the entire statute clearly discloses that the application thereof to municipalities depends upon the meaning and application of the phrase "paid fire department." That phrase has been construed and applied to variant factual situations in other jurisdictions. *Continental Hose Co.* v. *City of Fargo,* 17 N.D. 5, 114 N. W. 834; *Drake* v. *Quinn,* 48 Cal. App. 259, 119 P. 2d 796; *Kotze* v. *Montclair Police and Firemen's Pension*

*Commission,* 9 N. J. Misc. 1298, 157 A. 150; *Seavert* v. *Cooper,* 187 Iowa 1109, 175 N. W. 19.

The purpose of the statute here considered is to promote efficiency of the personnel of paid fire departments in this State; to preclude discrimination in appointments and promotions therein based on any consideration other than fitness for the performance of the duties required; and to prevent discharge without cause. Consideration of that purpose and the provisions of the statute raises a question of legislative intent as expressed in that statute. It is therefore incumbent upon this Court to ascertain and effectuate that intent. *McVey* v. *Telephone Co.,* 103 W. Va. 519, 138 S. E. 97; 2 Lewis' Sutherland Statutory Construction, 2d ed., Section 363. The legislative intent may be ascertained by excluding from the operation of the statute things included within its letter. *State* v. *Myers,* 74 W. Va. 488, 82 S. E. 270. If a statute is without ambiguity and the legislative intent is plain, there is no occasion to construe the statute; but where, as here, a literal application of the language used in the statute would lead to an absurd result, it is our duty to construe the statute so as to avoid such result and adopt a reasonable construction. *Newhart* v. *Pennybacker,* 120 W. Va. 774, 200 S. E. 350, 754. See *Coal & Coke Railroad Co.* v. *Conley, et al.,* 67 W. Va. 129, 178, 67 S. E. 613. Applying the foregoing principles, we are unable to attribute to the Legislature an intent to provide a civil service commission for municipalities wherein the officers of an organized fire department are paid nominal salaries and all other members of such department are compensated on an hourly basis for services actually rendered. If the literal words of the statute should be applied, any municipality in the State that pays the personnel of its fire department any sum whatsoever would be compelled to establish a civil service commission as provided in Section 2, Chapter 60, *id.* To so construe and apply the statute would lead to an absurd result not within the legislative intent and purpose. The provisions of Chapter 60 are intended to

provide a civil service commission for the appointment, promotion and removal of firemen, whose only vocation is fire fighting, and for which such persons are paid substantial salaries. The provisions of said chapter do not apply to municipalities having fire departments in which the services of the officers and members are incidental to their regular vocations. It is not to be supposed that the public has more than a passing interest in the proficiency and tenure of public employees whose employment is incidental and occasional.

For reasons herein set forth the writ prayed for is denied.

*Writ denied.*

HAYMOND, JUDGE, dissenting:

The conclusion reached in this case by the majority of the Court, in my judgment, ignores and nullifies the plain and unambiguous language of the statute, Section 2, Chapter 60, Acts of the Legislature, Regular Session, 1933; Code, 8-6A-2. For this reason I respectfully but emphatically express my dissent.

In this jurisdiction it is not necessary to cite authority for the proposition that when the legislative intent is clearly expressed in unambiguous language it must be given full force and effect by the courts. The generally recognized and well established rule relating to statutory construction is that an unambiguous statute should not be interpreted by the courts but should be enforced according to its clear language. 50 Am. Jur., pages 204 to 208. In the field of statutory construction ambiguity is usually regarded as doubtfulness of meaning, doubleness of meaning, or uncertainty of meaning of the language used in the statute. 50 Am. Jur., page 209. No ambiguity may be given a statute by interpretation when the language of the statute is unambiguous. *United States* v. *Shreveport Grain & Elevator Co.*, 287 U. S. 77, 77 L. Ed. 175, 53 Sup. Ct. 42; *McClain* v. *Davis*, 37 W. Va.

330, 16 S. E. 629, 18 L. R. A. 634. I detect no ambiguity in the language of Section 2 of the statute, and in my opinion the legislative intent to make the statute applicable to the Marmet fire department according to its clear language is plain beyond question.

As a result of the provisions of the Constitution of this State distributing the powers of government among three departments, legislative, executive and judicial, courts have no legislative authority. They should avoid judicial legislation, usurpation of legislative powers, or any entry into the legislative field. It is not within the province of a court, in the course of the construction of a statute, to make or supervise legislation; and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms. The terms of a statute may not be disregarded; and to depart from the meaning expressed by the words of the statute, according to their ordinary acceptance and significance and commonly attributed to them, is to alter the statute and is not interpretation but judicial legislation. Nothing may be read into a statute which is not within the manifest intention of the Legislature as determined from the act itself. 50 Am. Jur., pages 213, 214, 215.

The majority opinion concedes as much in saying that if a statute is without ambiguity and the legislative intent is plain, there is no occasion to construe the statute. But in the face of that pronouncement, the majority construes, and, as I think, reads into the statute a meaning which the Legislature never intended its terms to import or convey.

The Legislature declared that there should be a Civil Service Commission in each city or incorporated town having a fire department, *"any of the members of which are paid by said city or municipality"*. Section 2, Chapter 60, supra. (Emphasis supplied.) In this language there is no ambiguity, and the Legislature has expressed its meaning in words which are not technical and the

commonly accepted meaning of which is clear to the ordinary layman. The majority, though conceding that the language is unambiguous, and, as I think, substituting its view for the plain words used by the Legislature, says, in effect, that the Commission provided for by the statute shall be established in a city or incorporated town only when any of the members of its fire department is paid a substantial or regular or some other similar compensation or salary by the particular city or municipality.

This action in virtually changing and revising the statute makes ambiguous that which the Legislature made plain and unambiguous. Rules of interpretation are resorted to for the purpose of resolving, not creating, an ambiguity. The Legislature said "paid" without qualification; it did not say paid adequately or paid substantially. The Court, in effect, now says "paid substantially". When is payment substantial? When does it cease to be nominal? These terms are relative. Will they mean the same in cities of the size of Huntington and Wheeling as in towns with a population of one thousand or less? To me it seems clear that they will not and that substantial compensation will differ in amount, for the firemen whose only vocation is fire fighting, as mentioned by the majority, in towns and cities which vary widely in the size of their population. Is $50.00 per month nominal pay in any city or town in the State? If it be nominal in Clarksburg, will it be nominal or substantial in the town of Brandonville, Preston County, one of the smallest incorporated communities in the State, where fires can not be reasonably expected to occur with the frequency or of the extent ordinarily anticipated in urban centers? At what point does the rule of the majority cease to recognize any payment as nominal and begin to recognize it as substantial and within the legislative intent as now determined by the Court?

The Court, in effect, holds that the fire department, as now constituted in the town of Marmet, is not a paid,

but a volunteer, fire department, and it cites four cases from other jurisdictions as tending to clarify and support that conclusion. These cases arose in circumstances which differ from those existing in this case, and, in my opinion, they do not sustain the position of the Court. In fact, the case of *Continental Hose Company* v. *City of Fargo*, 17 N.D. 5, 114 N. W. 834, 836, cited in the opinion, as I understand it, is opposed to the conclusion of the majority and supports my contention. In that case a fire department of the City of Fargo, North Dakota, in which six of its members were paid annual or monthly salaries and the other members, numbering about fifty men, were paid by the hour for the time spent by them in actual attendance at fires, was under consideration by the Court. The statute in question, unlike the statute involved in this case, made no provision as to the character of the department and contained no language which classified it as a paid fire department; but in that case the Court held that the fire department was a paid fire department. In the opinion the Court uses this language: "And taking the words 'pay' or 'paid' in their ordinary meaning they (the firemen) are certainly paid firemen." Likewise in the case of *Drake* v. *Quinn*, 48 Cal. App. 259, 119 P. 2d 796, the Court held that a city ordinance which declared that a fire department of the city should consist of eleven paid men, in addition to a chief engineer, created a paid fire department and not a volunteer fire department. The statute under consideration in that case, also unlike the one now before this Court, contained no language which defined the character of the department. In the case of *Seavert* v. *Cooper*, 187 Iowa 1109, 175 N. W. 19, the controlling question was whether the plaintiff, who had formerly been a volunteer fireman, was entitled to a pension which by statute had been provided, in certain conditions, for retired members of a paid fire department, and the Court, under a statute which did not define a paid fire department, held that its provisions applied only to a fire department the members of which were paid a regular salary and whose time was devoted

to the service of the department. The fire department created by the ordinance and which was recognized by the Court as a paid fire department, consisted of a chief fire marshal and five other members, including an assistant fire marshal, each of whom was paid a salary of not less than $40.00 per month. The remaining case of *Kotze* v. *Montclair Police and Firemen's Pension Commission* 9 N.J. Misc. 1298, 157 A. 150, seems to me to have slight, if any, application, as it does not discuss or determine the essential elements of either a paid or a volunteer fire department. In that case the claimant was denied a pension which, under the statute, was available to a member of a paid fire department who had served as such for twenty years, because, though successively serving for a time as a member of a volunteer fire department, a call fire department at a salary of $100.00 per year, and a paid fire department, he had not acted as a member of a paid fire department for the period required by the statute to entitle him to the pension.

The Legislature in the enactment of statutes, is presumed to know, and to act advisedly in, the situation with which it undertakes to deal. Within that principle, it knew the conditions which existed in the various towns and municipalities of this State at the time it passed this statute. If it had intended to exclude fire departments in the small towns it could have done so by the use of apt language, or it could have prescribed a minimum salary or rate of pay to make the statute applicable. By its action in omitting such exclusion, or minimum requirement of pay, it clearly intended to make the statute apply to all municipalities, large and small, having a fire department, any member of which was, or would be, paid by any such municipality. By the terms of Section 2 of the act the Legislature clearly established its intended distinction between a paid and a volunteer fire department and declared that a fire department, any of whose members is paid, not substantially, but in fact paid, by the municipality, as here,

should be a paid fire department, and that in such municipality there should be a Civil Service Commission. How could the legislative intent be more clearly expressed in more simple or more easily understood language? When the language of the statute is plain and adequately expresses the intention of the Legislature, the statute must be given effect regardless of the practical consequences. 59 C. J. 969.

The majority opinion also states that if the statute here under consideration is applicable, it is the duty of the mayor to appoint a member of the Civil Service Commission for which it makes provision, and cites our own case of *Prichard* v. *DeVan*, 114 W. Va. 509, 172 S. E. 711. I think the statute, by its own clear terms, does apply, and I rely upon the *DeVan* case as authority for my position.

The majority mentions and appears to attach an uncertain degree of importance to the question of the actual payment of the firemen at Marmet since July 16, 1945. Though the pleadings are not in agreement on this point, all the parties concede that the ordinance fixing the monthly salaries of the chief, the assistant chief, and the fire truck operator, despite the attempted suspension by motion or resolution subsequently adopted by the council of the town, has not been repealed. This suspension, in my opinion, is of no legal consequence or effect. The law is well settled that, in the absence of a provision of an ordinance or the existence of a controlling statute, an ordinance generally can be modified or repealed only by another ordinance. 43 C. J. 568. It is clear to me that the suspension is inoperative, that the ordinance is still effective, that, in the present status of the matter, the suspended payment of the salaries is of no importance whatsoever, and that the salaried members of the fire department are paid members within the clear terms of the statute which expressly applies to the fire department of a city or town, any of the members of which is paid by the municipality.

The majority undertakes to justify what I believe to be an unnecessary and a strained construction of a plain, unambiguous provision of a valid act of the Legislature in order to avoid what it considers to be an absurdity which the statute would produce but for the interpretation which is now placed upon the language used in Section 2 of the act. With this reasoning I do not agree. I am unwilling to hold that to apply the plain law to the town of Marmet amounts to, or even approximates, an absurdity or produces an absurd result. Whether one agrees with the purpose or the scope of the statute is beside the point. Whether the present law is wise or desirable, or unwise or undesirable, is equally immaterial and is not for the Court to determine. The remedy for such a situation, if need of a remedy there be, lies not in the courts but in the Legislature. I agree fully that, in the proper exercise of its valid powers of statutory interpretation, when an ambiguity exists, a court may act to forestall an absurd or a ridiculous result which would necessarily follow the enactment and the application of a statute, and that when a particular construction of a statute would result in an absurdity some other reasonable construction which would not produce such absurdity should be made; but I deny the occurrence of any such consequence in the situation now before the Court. I am unwilling to determine the question of the existence of a statutory absurdity upon the basis of the size of the community affected, the amount of the salary paid, or the number of hours a fireman is required to work in fully discharging the duties of his position to combat fires within the town whenever they may occur. That the statute should actually apply to a town of the size of Marmet, as I think it does, may not have been realized by the Legislature when, in the exercise of its legislative power under the Constitution, it passed the act in question; but that lack of realization can not reasonably be considered or dealt with as an absurdity. So to regard the particular result in this case could bring about the vitiation, through legislative action by the courts, of all measures regularly enacted by the

Legislature which produce any unexpected or unforeseen result. By reasoning which leads to such a conclusion a tax measure which raises more or less revenue than was hoped for or expected at the time of its enactment could be rendered inoperative or burdensome by judicial interpretation. The orderly and established procedure in all such instances is not strained judicial construction but ordinary legislative amendment by the department of government charged with that function by the Constitution of this State.

Neither the failure to request, nor the inability to accomplish, the creation of the entire Commission of three members in this proceeding is a valid reason for denying the relief sought by the relator. The statute expressly provides for the appointment of one Commissioner by the mayor as the first step in the creative process. It can not now be said that the appointment of the remaining Commissioners will not follow the appointment of the first Commissioner if such appointment by the mayor be directed in this proceeding. But even if the selection of either or both of the two remaining members of the Commission does not hereafter occur, that future contingency is of no importance, and has no proper place, in the consideration or the determination of the simple and controlling question in this case. That question is whether the statute applies to the fire department of the town of Marmet. I believe that it does; and, as I hold to that opinion, I would award the writ as prayed for in the petition of the relator.