438 S.E.2d 843

Russell PARSONS, Petitioner Below, Appellee,

v.

CHARLESTON FIREFIGHTERS CIVIL SERVICE COMMISSION, Respondent Below, Appellant.

Clyde A. Cummings, and all other Firemen Similarly Situated, Intervenors Below, Appellants.

Charleston Professional Firefighters Association Local # 317, Intervenor Below, Appellant.

No. 21664.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Dec. 15, 1993.

Brian M. Kneafsey, Jr., Hunt, Lees, Farrell & Kessler, Charleston, for appellee.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for appellant Charleston Firefighters Civil Service Com'n.

William D. Turner and Grant Crandall, Crandall, Pyles & Haviland, Charleston, for appellant Charleston Professional Firefighters Ass'n Local # 317.

Robin J. Davis, Segal & Davis, Charleston, for appellants Clyde A. Cummings, et al.

PER CURIAM:

The issue in this appeal is whether the Circuit Court of Kanawha County was correct in holding that the appellee, Russell Parsons, could take the examination for promotion to the rank of lieutenant even though he failed to file a timely application to take the examination.[1] We find that the circuit court erred in its order dated November 5, 1992, which granted Mr. Parsons such a right.

On August 6, 1992, Mr. Parsons filed a petition with the circuit court requesting that the Charleston Firefighters Civil Service Commission (Commission) be ordered to allow him to take the examination on August 10, 1992. On August 10, 1992, the circuit court issued an order, which was confirmed by the November 5, 1992, order, that allowed Mr. Parsons to take the examination. However, the evidentiary hearing was not held until October 15, 1992.[2]

## I.

Counsel for the Commission states that he prepared a notice on June 16, 1992, announcing that the Mayor of the City of Charleston had notified the Commission that the Charleston Fire Department had an opening for the position of lieutenant. The notice advised that a vacancy existed for the position of lieutenant and that a competitive written examination would be given on August 10, 1992, at 6:00 p.m. at the Charleston Civic Center. The notice set forth the qualifications for being eligible to take the examination and the location for obtaining an application to take the examination. It also advised that an "application ... must be submitted in the Office of the Clerk of the City of Charleston no later than 4:00 p.m. on the 31st day of July, 1992."

Evidence taken at the October 15, 1992, hearing indicated that on June 18, 1992, a copy of the notice was delivered to every fire station in the City of Charleston. Raymond Stewart, an assistant chief and shift commander, testified that he specifically delivered a copy of the notice to the fire station where Mr. Parsons worked, and saw the notice prominently displayed on the station's bulletin board on June 21, 1992. In addition, Larry Tincher, another shift commander, testified that he saw the notice posted in Mr. Parsons' station prior to June 28, 1992. According to employment records, Mr. Parsons worked at the station on June 19, 22, 23, 25, and 28 of 1992, and, thereafter, he took vacation until August 2, 1992. An affidavit of publication was submitted averring that the notice of examination was published in the *Charleston Gazette* and the *Charleston Daily Mail* on July 6, 13, and 20, 1992.

Carl Beaver, Chief of the Charleston Fire Department, testified that Mr. Parsons called him in late July, prior to the application deadline, and asked if calculators were permitted in the examination room. At the hearing in the circuit court, Mr. Parsons admitted he was aware the examination was to be given, and admitted calling Mr. Beaver regarding the use of calculators. However, Mr. Parsons stated that he did not see any of the notices indicating that interested firefighters should apply for the examination no later than 4:00 p.m. on July 31, 1992. He said he was unaware of this requirement until after he returned from vacation and,

---

1. This appeal is a consolidated action brought by the Charleston Firefighters Civil Service Commission, respondent below; Clyde A. Cummings and all other firemen similarly situated, intervenors below; and the Charleston Professional Firefighters Association Local # 317, intervenor below. Each party filed a separate petition with this Court. By order dated April 7, 1993, we granted the petitions and ordered the appeals consolidated into one action.

2. At the time of the hearing on October 15, 1992, all of the examinations were graded, but the scores were sealed pending resolution of Mr. Parsons' case.

upon inquiry, he was informed it was too late for him to apply.

## II.

The establishment, powers and duties of fire companies and fire departments are provided for in W.Va.Code, 8–15–1, *et seq.* The City of Charleston maintains a paid fire department and, under W.Va.Code, 8–15–11 (1969), it is required to hold competitive examinations for appointments or promotions for positions in the fire department.[3] In *State ex rel. McLaughlin v. Morris,* 128 W.Va. 456, 461, 37 S.E.2d 85, 87 (1946), we said: "The purpose of the statute here considered is to promote efficiency of the personnel of paid fire departments in this State; to preclude discrimination in appointments and promotions therein based on any consideration other than fitness for the performance of the duties required; and to prevent discharge without cause."[4]

To effectuate these goals, W.Va.Code, 8–15–15(1) (1969), in part, mandates that the "firemen's civil service commission[5] ... *shall* ... [p]rescribe and enforce rules and regulations for carrying into effect the civil service provisions of this article." (Emphasis added). Likewise, W.Va.Code, 8–15–16 (1981), provides, in part, that the commission "*shall* make rules and regulations providing for

both competitive and medical examinations for appointments and promotions to all positions in the paid fire department in such municipality, and for such other matters as are necessary to carry out the purposes of the civil service provisions in this article." (Emphasis added). The details of such rules and regulations are described more specifically in subsequent Code sections and are addressed below as necessary.

As part of the Commission's duties in administering civil service examinations, the relevant section of W.Va.Code, 8–15–17 (1972), states:

"The firemen's civil service commission in each municipality *shall* require individuals applying for admission to any competitive examination provided for under the civil service provisions of this article or under the rules and regulations of the commission to file in its office, within a reasonable time *prior to the proposed examination,* a formal application[.]" (Emphasis added).

In accordance with W.Va.Code, 8–15–15 through –17, the Commission promulgated Rule 6.06[6] to govern vacancies and competitive examinations. The Commission and intervenors argue that the circuit court erred in permitting Mr. Parsons to take the exam,

---

3. W.Va.Code, 8–15–11, in relevant part, states: "All appointments and promotions to all positions in all paid fire departments shall be made only according to qualifications and fitness to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. No individual shall be ... promoted ... in any manner or by any means other than those prescribed in the following sections of this article[.]"

4. The statute involved in *Morris,* W.Va.Code, 8–6A–1 (1933), which is the predecessor to W.Va.Code, 8–15–11 (1969), is substantially similar to the relevant portion of W.Va.Code, 8–15–11.

5. The Commission exists pursuant to W.Va.Code, 8–15–12 (1987), which provides, in part: "In every municipality having a paid fire department, there shall be a "Firemen's Civil Service Commission."

6. Rule 6.06 became effective on July 3, 1977, and provides:
   6.06 *Notice of Vacancy and Competitive Examination*

"a. Upon receipt of the request for a list of eligibles from the appointing officer, the Commission shall give notice of the following:
"1. The fact that a vacancy or vacancies exist and that the same will be filled by promotion; and
"2. The requirements that must be satisfied in order to be placed on the list of eligibles; and
"3. The date or dates on which written examinations for the position will be held; and
"4. The last date on which applications for the position will be accepted by the Commission; and
"5. Locations at which applications for the position may be obtained.
"b. Each such notice shall be:
"1. Published once a week for two (2) weeks in two (2) newspapers of general circulation in the City of Charleston; and
"2. Posted at the office of the City Clerk on the Commission Bulletin Board and at all fire stations within the City of Charleston; and
"3. Distributed to such groups or organizations and in such manner as the Commission may direct."

thereby circumventing Rule 6.06, which is a fair and reasonable rule of the Commission.

█ In *Daniels v. McCulloch,* 168 W.Va. 740, 745, 285 S.E.2d 483, 486 (1981), we upheld the circuit court's ruling invalidating the promotions of two police officers, finding that "[t]he civil service statute [for police officers, W.Va.Code, 8–14–6, *et seq.*] should be followed as closely as possible in order to carry out the intent of the Legislature which enacted it." We adopted a similar standard for firefighters when we stated in Syllabus Point 1 of *Meek v. Pugh,* 186 W.Va. 609, 413 S.E.2d 666 (1991):

> " 'There must be strict compliance with the provisions of the Civil Service for Paid Fire Departments, *W.Va.Code,* 8–15–11 *et seq.* [1987].' Syllabus Point 2, *Legg v. Smith,* 181 W.Va. 796, 384 S.E.2d 833 (1989)."

There is no detailed statutory requirement for publishing a notice of examinations. W.Va.Code, 8–15–18 (1969), provides only that "[a]dequate public notice of the date, time and place of every competitive examination, together with information as to the kind of position to be filled, shall be given at least one week prior to such competitive examination." [7] Certainly, the posting provisions contained in Rule 6.06(b) more than meet this criteria.[8]

█ In the present case, we conclude that Rule 6.06 promulgated by the Commission complies with and fulfills the requirements in the Code by announcing the opening of the position and the procedure required to be followed to be eligible for the position. Mr. Parsons did not challenge the validity of Rule 6.06 nor the way in which the notice, adver- tisement, and application procedure was con- ducted by the Commission. His only argu- ment was that because he did not see the notice for filing the application, he should not have been precluded from taking the exami- nation as the result of missing the application deadline. We are not cited, nor have we found, any cases mandating that an employee who seeks to take a competitive examination for a promotable position must have actual notice of the notice for the examination.[9]

The Commission offered testimony through one of its members that there were valid reasons for establishing a deadline for those who wish to apply for an examination. First, it enables the Commission to deter- mine the initial eligibility of those applying for the examination.[10] Second, the Commis- sion purchases the examination from an out- side vendor and orders no extra copies to ensure the security of the exam. Finally, in its brief, the Commission asserts that there is a need to determine the number of moni- tors who supervise the giving of the exam, which it calculates based upon the number of applicants. These are valid practical consid- erations that warrant a deadline for filing an application to take an examination.

█ In conclusion, we find that Mr. Par- sons had no legal basis to require that he be allowed to take the examination. Conse- quently, the circuit court erred in finding that he did have a right to take the examina- tion, and its order is reversed in this regard. As a result of finding the plaintiff has no cause of action, we apply the rule contained in Syllabus Point 5 of *Starr v. State Farm Fire & Casualty Co.,* 188 W.Va. 313, 423 S.E.2d 922 (1992):

> making an appointment to fill the job opening, post a notice within the building or facility where the duties of the job will be performed and throughout the agency, which notice states that a job opening has occurred and describes the duties to be performed by a person em- ployed in that position."

---

**7.** A similar provision exists as to competitive examinations for police officers in W.Va.Code, 8–14–13 (1969).

**8.** For the text of Rule 6.06(b), see note 6, *supra.*

**9.** Under the State civil service system, the post- ing requirement is found in W.Va.Code, 29–6–24 (1986):

> "Whenever a job opening occurs within the classified service, the appointing authority shall, in addition to any other requirement of law or regulation for the posting of job open- ing notices, at least ten working days before

**10.** In this case, the notice contained these eligi- bility requirements: "In order to be placed upon the list of eligibles to take the examination, an applicant must have completed at least two (2) years of continuous service in the next lower grade in the Charleston Fire Department imme- diately prior to said examination."

" ' "When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered." Syllabus Point 9, *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965).' Syllabus Point 5, *Estate of Bayliss v. Lee*, 173 W.Va. 299, 315 S.E.2d 406 (1984)."

Thus, we reverse the judgment of the Circuit Court of Kanawha County and remand the case for entry of a judgment in favor of the Charleston Firefighters Civil Service Commission.

Reversed and remanded.