305 S.E.2d 268

**STATE ex rel. Florida SIMPKINS**

v.

**Hon. Robert HARVEY, Judge, etc.**

**No. 15769.**

Supreme Court of Appeals of West Virginia.

June 29, 1983.

314

William W. Pepper and Andrew S. Nason, Charleston, for relator.

Chauncey H. Browning, Jr., Atty. Gen., and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for respondent.

McGRAW, Chief Justice:

In this original proceeding, Florida Simpkins, the petitioner, seeks to compel the Honorable Robert Harvey, Judge of the Circuit Court of Kanawha County, the respondent, to order the preparation of a presentence investigation report, and to prohibit him from proceeding to try the petitioner until such report has been prepared. The underlying issue presented in this proceeding is whether W.Va.Code § 17C–5–2 (Cum.Supp.1982) imposes a mandatory penitentiary sentence precluding release on probation pursuant to W.Va. §§ 62–12–2, –3 (Cum.Supp.1982), or imprisonment in a youthful male offender center for treatment pursuant to W.Va.Code § 25–4–1 *et seq.* (1980 Replacement Vol.). We find that probation and treatment as a youthful male offender are valid sentencing alternatives for one convicted of an offense proscribed by W.Va.Code § 17C–5–2. However, we deny the writ because we find that the petitioner is not entitled to the specific relief which he seeks in this mandamus proceeding.

The petitioner was indicted for driving under the influence of alcohol and causing the death of another person in violation of W.Va.Code § 17C–5–2(a). This offense is a felony punishable by confinement in the penitentiary for not less than one nor more than three years, and by a fine of not less than one thousand dollars.[1]

On November 17, 1982, the petitioner appeared in court prepared to enter a

1. W.Va.Code § 17C–5–2(a) provides:

Any person who, while under the influence of alcohol, or under the influence of any controlled substance, or under the influence of any other drug to a degree which renders him incapable of safely driving, or under the combined influence of alcohol and any controlled substance or any other drug to a degree which renders him incapable of safely driving, drives a vehicle in this State, and when so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of such vehicle, which act or failure proximately causes the death of any

guilty plea to the charge in the indictment pursuant to a plea bargain agreement with the State. As its part of the bargain, the State agreed to stand silent at sentencing. In reaching their agreement, both the prosecuting attorney and defense counsel assumed that the petitioner was eligible for probation or for treatment as a youthful male offender.

Prior to entering his plea, the petitioner requested that a presentence investigation report be prepared to aid the court in deciding whether the petitioner should be released on probation or confined in a youthful male offender center. The court denied the petitioner's request, reasoning that W.Va.Code § 17C–5–2 provides for a mandatory penitentiary sentence precluding release on probation or treatment as a youthful male offender. The court therefore concluded that a presentence investigation would serve no purpose.

## I.

The issues interposed by the parties in this mandamus proceeding involve the in-terrelationship of our probation statutes, found in article 12 of chapter 62, the Youthful Male Offender Act, W.Va. § 25–4–1, *et seq.,* and our statute prescribing the penalties for driving under the influence of alcohol, W.Va.Code § 17C–5–2.

■ Our probation statutes provide generally that any person convicted of a felony, the maximum penalty for which is less than life imprisonment, shall be eligible for probation, provided they have not been convicted of a felony within the preceding five years.[2] We have held in the past that unless a clear statutory exception applies, this legislative grant of power places the matter of probation within the sound discretion of the trial court.[3] *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1982); *State ex rel. Winter v. MacQueen,* 161 W.Va. 30, 239 S.E.2d 660 (1972). Release on probation is subject to express statutory conditions, as well as reasonable conditions imposed by the trial court, *see* W.Va.Code § 62–12–9 (1977 Replacement Vol.);[4] *Louk v. Haynes,* 159 W.Va. 482,

person within one year next following such act or failure, if such act or failure be committed in reckless disregard of the safety of others, and if the influence of alcohol, controlled substances or drugs is shown to be a contributing cause to the death, shall be guilty of a felony, and upon conviction thereof shall be confined in the penitentiary for not less than one nor more than three years and shall be fined not less than one thousand dollars.

2. W.Va.Code § 62–12–2(a) provides in pertinent part:

All persons who have not been previously convicted of a felony within five years from the date of the felony for which they are charged, and who are found guilty of or plead guilty to any felony, the maximum penalty for which is less than life imprisonment, and all persons whether previously convicted or not, who are found guilty of or plead guilty to any misdemeanor, shall be eligible for probation ....

W.Va.Code § 62–12–3 provides in pertinent part:

Whenever, upon conviction of any person eligible for probation under the preceding section [§ 62–12–2], it shall appear to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the

court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article ....

3. West Virginia adheres to the rule that in the absence of statutory authorization, courts do not possess the power to suspend the imposition of a criminal sentence and place a person on probation. *Spencer v. Whyte,* 167 W.Va. 772, 280 S.E.2d 591 (1981); *Ex parte Fisher,* 95 W.Va. 397, 121 S.E. 287 (1924). *See generally Annot.,* 73 A.L.R.3d 474 (1976).

4. W.Va.Code § 62–12–9 provides:

Release on probation shall be upon the following conditions:

(1) That the probationer shall not, during the term of his probation, violate any criminal law of this or any other state, or of the United States.

(2) That he shall not, during the term of his probation, leave the State without the consent of the court which placed him on probation.

(3) That he shall comply with the rules and regulations prescribed by the court or by the board of probation and parole, as the case may be, for his supervision by the probation officer.

In addition, the court may impose, subject to modification at any time, any other condi-

223 S.E.2d 780 (1976), which may be imposed for a maximum period of five years. W.Va.Code § 62–12–11 (1977 Replacement Vol.).

■ The Youthful Male Offender Act, W.Va. § 25–4–1 *et seq.*, grants to the trial court the power to suspend the sentence of any male youth between the ages of 16 and 21 who has been convicted of a criminal offense, other than an offense punishable by life imprisonment, and to confine him in a youthful male offender center for treatment. W.Va. § 25–4–6. Upon completion of the treatment program, or upon a determination that he is unfit for treatment, the offender is returned to the sentencing court for probation or resentencing. *Id.*[5] The Act and our probation statutes are to be read and considered together in determining their scope and effect. *State v. Reel,* 152 W.Va. 646, 165 S.E.2d 813 (1969).

■ The pertinent language of W.Va. Code § 17C–5–2 provides: "The sentences provided herein upon conviction of a violation of this article are mandatory and shall not be subject to suspension or probation, except that the court may provide for community service, or work release alternatives, or weekends or part-time confinements." W.Va.Code § 17C–5–2(*l* ). This statutory language was enacted into law in 1981. *See* 1981 W.Va.Acts ch. 159.[6]

The respondent characterizes the language of W.Va.Code § 17C–5–2 as being in conflict with, and repugnant to, the grant of probationary power contained in W.Va. Code § 62–12–2 and the power to imprison appropriate defendants in a youthful male offender center contained in W.Va.Code 25–4–6. The respondent then argues that W.Va.Code § 17C–5–2, being a specific enactment, should control over the general provisions of our probation statutes and the Youthful Male Offender Act. While we recognize that a general statutory enactment must yield to a specific statutory enactment where the statutes relate to the same subject and cannot be reconciled, *see, e.g., State ex rel. Sahley v. Thompson,* 151 W.Va. 336, 151 S.E.2d 870 (1966); *see also*

---

tions which it may deem advisable, including but not limited to any of the following:

(1) That he shall make restitution or reparation, in whole or in part, immediately or within the period of probation, to any party injured by the crime for which he has been convicted.

(2) That he shall pay any fine assessed and the costs of the proceeding in such installments as the court may direct.

(3) That he shall make contributions from his earnings, in such sums as the court may direct, for the support of his dependents.

**5.** W.Va.Code § 25–4–6 provides:

The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions to be assigned to a center. The period of confinement shall not exceed two years. If, in the opinion of the superintendent, such male offender proves to be an unfit person to remain in such a center, he shall be returned to the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted. In his discretion, the judge may allow the defendant credit on his sentence for time he has spent in the center.

When, in the opinion of the superintendent, any boy has satisfactorily completed the center training program, such male offender shall be returned to the jurisdiction of the court which originally committed him. He shall be eligible for probation for the offense with which he is charged, and the judge of the court shall immediately place him on probation. In the event his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation. The court shall, however, give the defendant credit on his sentence for the time he spent in the center.

Any male youth between the ages of ten and eighteen committed by the judge of any court of competent jurisdiction for any of the causes, and in the manner prescribed in article five [§ 49–5–1 et seq.], chapter forty-nine of this Code, may, if such youth is or has attained the age of sixteen, be placed in a center or transferred from the industrial school or like facility to a center and back to such facility by the commissioner of public institutions, if he deems it proper for the youth's detention and rehabilitation.

**6.** *See State v. Loy,* 146 W.Va. 308, 119 S.E.2d 826 (1961), for the legislative history of former W.Va.Code § 17C–5–2 [1957].

*State ex rel. Myers v. Woods,* 154 W.Va. 431, 175 S.E.2d 637 (1970), we find no conflict in the statutes which requires application of this principle.

■ The cardinal rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953); *Pond Creek Pocahontas Co. v. Alexander,* 137 W.Va. 864, 74 S.E.2d 590 (1953). Primarily, such intent must be determined from the language of the statute, *see Spencer v. Yerace,* 155 W.Va. 54, 180 S.E.2d 868 (1971); *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959), and where the statute is clear and unambiguous and legislative intent is plain, it is the duty of the court to apply the statute, and not to construe it. *See Cummins v. State Workmen's Compensation Comm'r,* 152 W.Va. 781, 166 S.E.2d 562 (1969); *State v. Bragg,* 152 W.Va. 372, 163 S.E.2d 685 (1968). Where, however, the language used is ambiguous, the court, in ascertaining the legislative intent, should consider the subject matter of the legislation, its purposes, objects and effects in addition to its express terms. *See, e.g., State ex rel. Holbert v. Robinson,* 134 W.Va. 524, 59 S.E.2d 884 (1950).

■ Turning to the language of W.Va. Code § 17C–5–2, we note that subsection (*l*), in its first clause, provides that the sentences provided for a violation of any offense under article 5 of chapter 17C "are mandatory and shall not be subject to suspension or probation ...." However, the next clause of subsection (*l*) expressly provides an exception[7] to this rule: "[E]xcept that the court may provide for community service, or work release alternatives, or weekends or part-time confinements." The

effect of this language is to remove the enumerated alternatives from the operation of the preceding clause, thus limiting the mandatory language of subsection (*l*). *See generally Sutherland Statutory Construction* §§ 20.22; 47.11 (1972). This Court has held in the past that where such an exception occurs in a penal statute, the statute as a whole must be construed by application of the rule of strict construction to the penal clause. *State v. Cunningham,* 90 W.Va. 806, 111 S.E. 835 (1922). Further support for the application of this rule of construction to W.Va.Code § 17C–5–2 can be found in more recent pronouncements that "[p]enal statutes must be strictly construed against the State and in favor of the defendant," Syllabus Point 2, *State v. Ball,* 164 W.Va. 588, 264 S.E.2d 844 (1980),[8] and by the rule that statutes dealing with probation are remedial in nature and subject to a construction in favor of the defendant. *See State v. Wotring, supra; State ex rel. Hanley v. Hey,* 163 W.Va. 103, 255 S.E.2d 354 (1979). Applying these principles to the language of W.Va.Code § 17C–5–2(*l*), we conclude that when one or more of the specified sentencing alternatives are imposed, the mandatory language contained in the first clause of subsection (*l*) of W.Va.Code § 17C–5–2, which precludes suspension or probation, is inapplicable.

■ Our conclusion is buttressed by an examination of the purpose underlying the statute. Historically, penal statutes have been recognized as serving four basic purposes: (1) to deter crime; (2) to incapacitate the offender; (3) to vindicate the social order; and (4) to rehabilitate the offender. *See* A. Campbell, *The Law of Sentencing* § 4 (1978). It is plausible to argue that W.Va.Code § 17C–5–2 fulfills all of

---

**7.** Although framed in the terms of an "exception", the second clause of W.Va.Code § 17C–5–2(*l*) is what traditionally has been considered a "proviso". In traditional terms, an "exception" is said to restrict the enacting clause of the statute to a particular case, while a "proviso" is said to remove special cases from the general enactment and provide for them specially. 1A *Sutherland Statutory Construction* § 20.22 (1972). Such semantic distinctions, however, are of little utility in discerning legis-

lative intent for they are seldom adhered to by legislative draftsmen. *Id.*

**8.** *Accord, State v. Bennett,* 168 W.Va. 361, 284 S.E.2d 622 (1981); *Myers v. Murensky,* 162 W.Va. 5, 245 S.E.2d 920 (1978), *overruled on other grounds, State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982). *See also State v. Riley,* 158 W.Va. 823, 215 S.E.2d 460 (1975); *State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482 (1970).

these purposes. First, it can be recognized that W.Va.Code § 17C–5–2 serves to deter persons from driving under the influence of alcohol. Such deterrence is effected both by the stigma which society attaches to criminal convictions, as well as by the loss of freedom and monetary fine which can result from conviction. Second, the statute can be said to incapacitate offenders in the sense that it renders them incapable of committing further offenses during their confinement. Third, the penalties imposed for a violation of W.Va.Code § 17C–5–2 can be viewed as punishing the wrongdoer who deviates from its terms, and thus as vindicating the societal standard of conduct represented by the statute. However, while all penal statutes may to some extent advance these rationales, the majority of jurisdictions recognize that the dominate and overriding purpose of penal statutes is rehabilitation. *See* A. Campbell, *supra* at § 8. The West Virginia Legislature, perhaps in recognition of the fact that 99 percent of prisoners are returned to society after confinement, *see* D. Glaser, *The Effectiveness of a Prison and Parole System* 3 (abridged ed. 1969), adopted this view by the enactment of W.Va.Code § 62–13–1 (Cum.Supp.1982) which requires rehabilitation to be the primary goal of the West Virginia penal system. *See Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981). Accordingly, we here recognize that the paramount purpose served by the penal provisions of W.Va.Code § 17C–5–2 is to rehabilitate offenders and thereby lessen the likelihood that offenses will be committed in the future.

The purpose underlying our probation statutes is entirely consistent with the rehabilitative thrust of W.Va.Code § 17C–5–2. Probation as a sentencing alternative emerged from the egalitarian movement of the nineteenth century which adhered to the rehabilitative, rather than the retributive, approach to discouraging crime. A. Campbell, *supra* § 11. The American Bar Association has advanced the view that probation often offers the best possibility for meaningful rehabilitation:

Often institutionalization will result in little more than education of the offender in more sophisticated methods of engaging in criminal conduct, and certainly a great deal less than a realistic program of rehabilitation. Particularly in the case of first offenders, there is a much greater chance in most cases of avoiding a subsequent offense by helping the offender adjust to society than by removing him from it.

American Bar Association, *Standards Relating to Sentencing Alternatives and Procedures* § 2.3e, *Commentary* (Approved Draft, 1968). This Court recognized the rehabilitative goal of our probation statutes in *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 165 S.E.2d 90 (1968), where we observed: "[P]robation is . . . one of the devices of an enlightened system of penology which has for its purpose the reclamation and rehabilitation of the criminal." 152 W.Va. at 506, 165 S.E.2d at 94.

W.Va.Code § 17C–5–2 is no more in conflict with our probation statutes than is any other of our penal statutes. Penal statutes invariably impose sentence in mandatory language. *See, e.g.,* W.Va.Code §§ 61–3–1 (1977 Replacement Vol.) (first degree arson); 61–2–9 (Cum.Supp.1982) (assault); 61–3–11 (1977 Replacement Vol.) (burglary); 61–2–3 (1977 Replacement Vol.) (second degree murder); 61–8B–3 (1977 Replacement Vol.) (sexual assault). *See also State v. Robbins*, 257 N.W.2d 63 (Iowa 1977). Our probation statutes ameliorate such punitive sentences in favor of rehabilitation of the offender, the ultimate goal of our penal system. *See Cooper v. Gwinn, supra.*

The rehabilitative goal of W.Va.Code § 17C–5–2, and therefore, the statute's consistency with the goals of probation is supported by the sentencing alternatives expressly authorized by W.Va.Code § 17C–5–2. These alternatives include community service, work release options, and weekend or part-time confinement. By their nature, each of these alternatives contemplates a less restrictive penalty than incarceration in the penitentiary. The alternatives belie the mandatory interpreta-

tion given the statute by the respondent, for each requires the suspension of sentence and some form of probationary release. Further, we note that in the past when the Legislature has intended to withdraw probation eligibility for specific offenses it amended our probation statute to that end. *See* W.Va.Code § 62–12–2(b) [1979] (precluding probationary release for "any person who commits or attempts to commit a felony with the use, presentment or brandishing of a firearm"). Had the Legislature intended to unconditionally withdraw probation eligibility for persons convicted of offenses proscribed by article 5 of chapter 17C, it is reasonable to conclude that they would have followed the same course.

Persons convicted under W.Va.Code § 17C–5–2 are by definition substance abusers in need of rehabilitative services. The Legislature has recognized the unique rehabilitative needs of this population by providing sentencing alternatives which are found in no other West Virginia penal statute. Such sentencing alternatives represent the realistic perception of the Legislature that substance abuse offenders inevitably return to the community, and that modification of offenders' behavior with respect to the abuse of intoxicating substances is necessary prior to their unrestrained release. Accordingly, the Legislature has provided a unique opportunity for sentencing courts to fashion flexible and effective programs for the rehabilitation of persons convicted of an offense under W.Va.Code § 17C–5–2 while providing close supervision of the offender in order that the community may be protected.[9] By

enactment of the sentencing alternatives contained in W.Va.Code § 17C–5–2, the Legislature has acted with wisdom to restrain substance abuse offenders for an extended period of as long as five years, *see* W.Va.Code § 62–12–11, in order that the root of their problem, the abuse of intoxicating substances, may be addressed and treated. To hold that such alternatives are meaningless rhetorical exercises would frustrate the spirit and purpose of the statute.

In syllabus point five of *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908), this Court held:

A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

By its express terms, W.Va.Code § 17C–5–2 does not preclude suspension of sentence and release on probation when one or more of the sentencing alternatives of community service, work release, or week-end or part-time confinement is imposed by the trial court. Since the Legislature has granted trial courts discretion to consider probation in any case where no specific statutory language forbids probation, *see* W.Va.Code § 62–12–3; *State v. Wotring, supra,* we do not read W.Va.

9. A variety of sentencing alternatives are available under the statute which can be tailored to the individual defendant's particular needs. For example, community service could take the form of volunteer work in local detoxification facilities or emergency rooms of local hospitals where the often tragic results of alcohol abuse can be witnessed first hand. Work release alternatives provide the opportunity for otherwise useful members of society to continue their work coupled with restrictive detention in a half-way house or county or municipal jail. *Cf.* W.Va.Code § 62–11A–1 (1977 Replacement Vol.). While W.Va.Code § 17C–5–2 does not specifically require it, a desirable component of

any rehabilitative program for these offenders would include alcoholic or substance abuse treatment. Thus, for example, weekend or part-time confinement could be specifically tailored to the alcohol abuser by providing periodic mandatory confinement in the alcoholic treatment unit at the state penitentiary or at other local facilities. Such alternatives could be doubly effective when coupled with probationary supervision. The sentencing proposals we suggest are by no means exhaustive. Sentencing courts are encouraged to employ their own experience and ingenuity in formulating other rehabilitative plans consistent with the requirements of W.Va.Code § 17C–5–2.

Code § 17C–5–2(*l*) as precluding probation where one of these sentencing alternatives is imposed. While W.Va.Code § 17C–5–2(*l*) clearly contemplates that no person convicted of an offense under article 5 of chapter 17C shall be released on unsupervised probation, the statute does not prohibit probationary release imposed concomitantly with one or more of the specific sentencing alternatives.

■ Consequently, we hold that suspension of sentence and release on probation is an authorized sentencing alternative for a violation of W.Va.Code § 17C–5–2, provided that the statutory conditions attendant to probationary release are met, *see* W.Va. Code § 62–12–9, and that probation is imposed concomitantly with community service, work release, or weekend or part-time confinement.[10] Any other interpretation of the language used by the Legislature would render meaningless the sentencing alternatives expressly authorized by W.Va. Code § 17C–5–2 and frustrate the rehabilitative purpose of our penal system.[11]

■ Our analysis further indicates that imprisonment as a youthful male offender pursuant to W.Va.Code § 25–4–6 is an available sentencing alternative for those convicted of an offense under W.Va.Code § 17C–5–2 who otherwise satisfy the youthful male offender criteria. The Youthful Male Offender Act, W.Va.Code § 25–4–1 *et seq.*, shares the rehabilitative goals of W.Va.Code § 17C–5–2 and our probation statutes. The goals of the act are expressly stated by the Legislature in W.Va.Code § 25–4–1:

The purpose of this article is to provide appropriate facilities for the housing of youthful male offenders convicted of or pleading guilty to violation of law before courts with original jurisdiction or juvenile courts, who are amenable to discipline other than in close confinement; to secure a better classification, and segregation of such persons according to their capabilities, interests, and responsiveness to control and responsibility; to reduce the necessity of expanding the existing grounds and housing facilities for the confinement of such persons, and to give better opportunity to youthful offenders for reformation and encouragement of self-discipline.

Thus, the Youthful Male Offender Act is legislation in aid of the rehabilitative purpose of W.Va.Code § 17C–5–2.

■ Moreover, as we have previously discussed, W.Va.Code § 17C–5–2 itself authorizes sentencing alternatives less restrictive than full-time incarceration in the penitentiary, including community service.[12] In light of such authorized sentencing alternatives, it would require a strained and incongruous interpretation of W.Va. Code § 17C–5–2 to conclude that the statute precludes the more restrictive alternative of confinement in a youthful male offender treatment center. Such an interpretation would contradict the duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust, or unreasonable results. *See, e.g., Parsons v. Roane Coun-*

---

**10.** We wish to make clear that we do not here overrule our holding in syllabus point two of *Spencer v. Whyte, supra* footnote 3, that "[i]n the absence of specific language in our probation statutes empowering a trial court to impose incarceration as a condition of probation, the trial court lacks the power to impose such a condition." Rather, we find that the language of W.Va.Code § 17C–5–2(*l*) contains an express legislative grant of power permitting the enumerated limited forms of incarceration to be imposed concurrently with release on probation.

**11.** Probationary release, of course, remains within the sound discretion of the trial court, *see State v. Wotring, supra,* and offenders who do not represent good candidates for probation-

ary release may be sentenced to confinement in the penitentiary as provided by statute. Thus, a defendant convicted of the offense proscribed by W.Va.Code § 17C–5–2(a) may be sentenced to confinement in the penitentiary for a maximum of three years. However, if one of the sentencing alternatives of community service, work release or weekend, or part-time confinement is imposed in lieu of incarceration in the penitentiary, the offender may be released subject to probationary supervision for a maximum period of five years. *See* W.Va.Code § 62–12–11. The $1,000 minimum fine may be imposed in any case. *See* W.Va.Code § 62–12–9.

**12.** *See* footnote 9, *supra.*

*ty Court,* 92 W.Va. 490, 115 S.E. 473 (1922). *See also American Tobacco Co., Inc. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982); *Richardson v. State Compensation Comm'r,* 137 W.Va. 819, 74 S.E.2d 258 (1953); *State ex rel. McLaughlin v. Morris,* 128 W.Va. 456, 465, 37 S.E.2d 85 (1946); *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1939); *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925); *Rider v. Braxton County Court,* 74 W.Va. 712, 82 S.E. 1083 (1914); *Dickey v. Smith,* 42 W.Va. 805, 26 S.E. 373 (1896).

The Youthful Male Offender Act provides that once the offender has completed his treatment, or upon a determination that he is unfit for treatment, the offender shall be returned to the sentencing court and placed on probation. W.Va.Code § 25–4–6. Provided that one of the alternatives of "community service, or work-release alternatives, or weekends or part-time confinements," W.Va.Code § 17C–5–2, is imposed concomitantly with a rehabilitative program of probation, there is no statutory provision which precludes imprisonment in a youthful male offender center for an otherwise eligible defendant convicted of a violation of W.Va.Code § 17C–5–2. Accordingly, we conclude that a person convicted of an offense proscribed by W.Va. Code § 17C–5–2, if otherwise eligible, may be imprisoned in a youthful male offender center for purposes of treatment pursuant to W.Va.Code § 25–4–6.

## II.

▮▮▮▮▮ Under our rules of criminal procedure, a plea bargain agreement must be disclosed in open court at the time the plea is offered. W.Va.R.Crim.P. 11(e). The agreement is subject to approval by the court, *see State v. Wayne,* 162 W.Va. 41, 245 S.E.2d 838 (1978); *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975); *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932); *see also* W.Va.Code § 62–2–25 (1977 Replacement Vol.), which may accept the agreement and embody it in the judgment and sentence to be imposed, reject the agreement and afford the defendant an opportunity to then withdraw his plea, or defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. W.Va.R. Crim.P. 11(e). A defendant cannot compel performance of a plea bargain agreement unless he enters a plea of guilty or otherwise acts to his substantial detriment in reliance on the agreement. *See Brooks v. Narick,* 161 W.Va. 415, 243 S.E.2d 841 (1978); *State ex rel. Gray v. McClure,* 161 W.Va. 488, 242 S.E.2d 704 (1978).

Our law has long provided for a presentence investigation to aid the trial court in determining the propriety and conditions of a criminal defendant's release on probation. *See* W.Va.Code § 62–12–7 [1939]. Pursuant to statute, the report of the presentence investigation is required to include information concerning the offender's court and criminal record, occupation, family background, education, habits and associations, mental and physical condition, as well as information concerning the offender's dependents and other relevant facts. *Id.* A presentence investigation is required to be made "[w]hen directed by the court," and no person convicted of a felony may be released on probation until a report of the investigation "has been presented to and considered by the court." *Id.*

These statutory requirements have been substantially incorporated in our new rules of criminal procedure. Rule 32(c) provides, in pertinent part:

(c) PRESENTENCE INVESTIGATION.—

(1) When Made.—The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except

that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

(2) Report.—The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

W.Va.Crim.P. 32(c)(1) and (2). Although Rule 32 does not prohibit a presentence investigation prior to the entry of a plea, neither does it *require* that an investigation be made prior to the entry of a plea.

■ Apparently, the petitioner has yet to enter a plea to the charges against him, and consequently, he possesses no clear legal right to the relief which he seeks to compel. The petitioner is entitled, at the time his plea is offered, to disclosure of any plea agreement reached by the parties, and its consideration by the trial court, without the interjection of new conditions by the court. *See State ex rel. Roark v. Casey,* 169 W.Va. 280, 286 S.E.2d 702 (1982); W.Va.R.Crim.P. 11(e). After entry of a plea, the trial court is required to order a presentence investigation unless the defendant waives the investigation, or the court determines on the record that an investigation and report is unnecessary to enable the meaningful exercise of sentencing discretion. W.Va.R.Crim.P. 32(c)(1). However, a criminal defendant is not entitled by law to compel a presentence investigation prior to the entry of a plea. Accordingly, we deny the writ.

Writ denied.