400 S.E.2d 293

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES/WEST VIRGINIA, West Virginia AFSCME Retirees, Ethyl M. Thomas Williams and Virginia Dotson**

v.

**Sally K. RICHARDSON, Director of the Public Employees Insurance Agency.**

No. 19873.

Supreme Court of Appeals of West Virginia.

Dec. 13, 1990.

---

**286**

James M. Haviland, Leah Griffin, McIntyre, Haviland & Jordan, Charleston, for AFSCME.

David P. Lambert, Sp. Asst. Atty. Gen., Public Employees Ins. Agency, Charleston, for Public Employees Ins. Agency.

WORKMAN, Justice:

This case involves a certified question that was jointly filed with this Court to resolve whether the Public Employees Insurance Agency ("PEIA") Director, pursuant to the West Virginia Public Employees Insurance Act ("the Act"), W.Va. Code §§ 5–16–1 to –27 (effective August 26, 1990), has the authority to enact and implement an increase in insurance premiums for retired state employees. The parties are in agreement that the issue is limited to whether premiums can properly be in-

creased for the months of November and December 1990. Both parties concur that effective January 1, 1991, the finance board created by the Act has the authority to increase premiums for *all* PEIA subscribers.

This case was initially brought before the Circuit Court of Kanawha County wherein the court held that:

> the Legislature, in *West Virginia Code*, § 5–16–5(j), preserved the Director's authority to increase the premium costs to retired employees and public employers, prior to implementation of the Finance Board's 'initial financial plan' on January 1, 1991 and the Legislature appropriated $42.5 million to fund a portion of those premium increases.

The section of the Act relied upon by the circuit court to support its ruling in favor of the PEIA, § 5–16–5(j), provides as follows:

> The types and levels of costs to employers, employees and retired employees participating in public employees insurance agency group insurance plans which are currently in effect on the effective date of this article [August 26, 1990], are hereby authorized. The types and levels of costs to employees participating in public employees insurance agency group insurance plans which are currently in effect on the effective date of this article ... shall remain in effect unless and until changed or authorized to be changed by the finance board in a financial plan prepared and approved in accordance with this section.

W.Va. Code § 5–16–5(j).

To find authority on the part of the PEIA Director to increase the premiums of retired state employees, the circuit court scrutinized the two sentences in W.Va. Code § 5–16–5(j). The court reasoned that the limited use of the term "employees" in the second sentence, as contrasted to the inclusion of employers and retired employees in the first sentence, compelled the conclusion that the Legislature specifically intended to prohibit the increase in insurance premiums *only* to those individuals qualifying as active state employees under

the Act. By negative implication, therefore, the circuit court deduced that retired employees were not expressly excluded from premium increases. We take no issue with the court's reasoning to this point.

We differ, however, with the circuit court's conclusion that the "authorization" provided by the first sentence of W.Va. Code § 5–16–5(j) of those "types and levels of costs" to, *inter alia,* retired employees, in effect on August 26, 1990, necessarily implies the additional authority which would permit the PEIA Director to implement premium increases to retired employees. The trial court reached this conclusion by acknowledging that the Act deleted "much of the prior language delineating specific types and levels of costs...." Specifically deleted are limitations on the dollar amounts of deductibles (former W.Va. Code § 5–16–12a (1988)), limitations on the payment of outpatient X-rays and laboratory services (former W.Va. Code § 5–16–12b (1988)), and limitations on premium contributions from active state employees (former W.Va. Code §§ 5–16–13 and –13a (1988)). The circuit court reasoned:

> if all language relating to these types of costs were to be deleted from the law, some general authorizing language had to be added to enable the agency to continue to impose these costs until the Finance Board could prepare and implement its initial financial plan on January 1, 1991. Accordingly, the Court concludes the first sentence of new Code § 5–1[6]–5(j) was intended to preserve authority to the Director, not to restrict or remove it. (citations omitted)

While we do not question the circuit court's opinion that the intent underlying the first sentence of W.Va. Code § 5–16–5(j) was to *preserve* the PEIA Director's authority to "impose these costs until the Finance Board could prepare and implement its initial financial plan," we cannot join the trial court in the leap of logic which caused it to conclude that this same sentence necessarily grants authority to the Director to *increase* premiums to retired employees. We find a notable lack of authority in either W.Va. Code

§ 5–16–5(j) or the Act as a whole which would permit the result reached by the trial court: that the Legislature granted the PEIA Director continued rate-making authority prior to the implementation of the first financial plan contemplated by the Act.

There is no dispute that under the former act, *see* W.Va. Code §§ 5–16–1 to –21 (1988), the PEIA Director had rate-making authority. *See, e.g.,* W.Va. Code § 5–16–13a. When the new Act went into effect on August 26, 1990, however, no section comparable to the former § 5–16–13a was included in the Act's provisions. The scheme of the new Act, as even the trial court recognized during the proceedings held below, is that

> the Legislature ... in creating this Board was ..., perhaps, once and for all, [trying to] have a system whereby the costs are determined more accurately, more completely, with some degree, using the actuarial as an example, that, you know, not just at the whim and the pleasure of an individual or certain individuals but with some thought; and that we're going to put this into effect because there is some stability needed in running the PEIA in terms of these costs, and we're going to put it into effect, ... within 3 or 4 months, January 1, 1991, this is when things are going to start to occur.

> And they wanted things to occur, wouldn't you think, at the same time with due consideration given to everything? I mean, in a package?

Our review of the Act as a whole compels this same realization that a primary objective was to create a finance board whose purpose was to "bring fiscal stability to the public employees insurance agency through development of an annual financial plan designed to meet the agency's estimated total financial requirements...." W.Va. Code § 5–16–5(a). It is clear that the Legislature foresaw that the implementation of the board's first financial plan could not possibly be implemented prior to January 1, 1991. *See* W.Va. Code § 5–16–5(d). One further observation results from our reading of the entire Act: No one, neither the

PEIA Director nor the Finance Board, was given authority to implement premium increases to retired employees until the board's initial financial plan is implemented on January 1, 1991. This conclusion is mandated by the fact that there is no specific statutory language in the Act which authorizes the PEIA Director to set rates—only the finance board has that authority. *Cf.* W.Va. Code § 5–16–5(j) with § 5–16–5(c). In the final analysis, the authorization provided by the first sentence of W.Va. Code § 5–16–5(j) of the current "types and levels of costs" cannot, by any stretch of the imagination, be interpreted as granting the PEIA Director the additional authority to implement rate increases to retired employees.

In making its ruling, the circuit court placed much reliance on the legislative history surrounding the enactment of the Act as well as the Legislature's appropriation of 42.5 million dollars to provide additional funding for the state agencies whose premiums were also increased effective November 1, 1990. The circuit court deduced from the legislative history that the Legislature was aware that the PEIA Director intended to implement certain rate increases on November 1, 1990, including premiums of retired employees. This fact of awareness, coupled with the subsequent enactment of the appropriations bill, caused the circuit court to conclude that the Legislature must have impliedly intended to grant the PEIA Director the authority to increase the premiums of retired employees. If the Legislature did intend to do this, however, they failed to include any language whatsoever in the Act that suggests or even implies that the PEIA Director was to have continued rate-making authority over retired employees.

While we do not dispute the importance of legislative history, because we do not find the provision in question (W.Va. Code § 5–16–5(j) or the Act as a whole to be ambiguous or unclear as to the absence of the Director's rate-making authority, we cannot, nor is it necessary to, look to legislative history for edification in this case. *See State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268, 273 (1983), *su-*

*perseded by statute on another point as stated in State ex rel. Hagg v. Spillers,* 181 W.Va. 387, 382 S.E.2d 581 (1989). When the provisions of the Act are read in *pari materia,* as they must be, one fact stands out: Once the Act went into effect, sole ratemaking responsibility is vested in the finance board created pursuant to the Act. *See State by State Road Comm'n v. Professional Realty Co.,* 144 W.Va. 652, 661, 110 S.E.2d 616, 622 (1959); *accord Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 115, 219 S.E.2d 361, 365 (1975); *see* W.Va. Code § 5–16–5. Notwithstanding the fact that the Act provides that the board's first financial plan shall become effective and implemented on January 1, 1991, nothing in the Act permits the PEIA Director to increase premium rates for retired employees during the interim period between when the Act took effect on August 26, 1990, and when the first financial plan goes into effect on January 1, 1991.

Based on the foregoing reasons, we hereby determine that the Act does not grant the PEIA Director authority to increase the insurance premiums of retired state employees for the months of November and December, 1990. Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered; Case dismissed.