542 S.E.2d 919

**In re GREG H.**

No. 27769.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2000.

Decided Dec. 11, 2000.

---

**12.** Upon remand there should be a determination of the amount of money owed by and previously paid by the appellee.

Gerald R. Linkous, Esq., Randal W. Roahrig & Associates, Princeton, West Virginia, Attorney for Appellant.

Thomas L. Berry, Esq., Assistant Prosecuting Attorney, Princeton, West Virginia, Attorney for Appellee State of West Virginia.

PER CURIAM:

This case presents the straightforward issue of whether a magistrate, sitting as juvenile referee, may order that a juvenile undergo an improvement period pursuant to W. Va.Code § 49–5–9(b) (1998). For the reasons set forth below, we determine that a circuit court judge is the only judicial officer authorized to take such action.

I.

BACKGROUND

The appellant, Greg H.,[1] was allegedly involved in an altercation at Princeton High School on March 10, 1999, which resulted in a

petition of delinquency later being filed in the Circuit Court of Mercer County. A preliminary hearing was held on April 19, 1999, before Magistrate Roy Compton, sitting as juvenile referee.[2]

At the preliminary hearing, Greg H. moved for an improvement period pursuant to W. Va.Code § 49–5–9(b). Magistrate Compton subsequently granted the requested improvement period, which was to run for one year. The State petitioned for prohibition relief before the circuit court, arguing that Magistrate Compton had exceeded his statutory authority by granting the requested improvement period. The circuit court granted relief requiring Magistrate Compton to vacate his previous order, ruling that juvenile referees do not have jurisdiction to grant improvement periods under the § 49–5–9(b). It is from this ruling that Greg H. now appeals.

II.

STANDARD OF REVIEW

Because the present appeal involves a challenge to a ruling granting prohibition relief, we review the circuit court's ruling *de novo*. *See Health Management, Inc. v. Lindell*, 207 W.Va. 68, 72, 528 S.E.2d 762, 766 (1999); syl. pt. 1, *Martin v. West Virginia Div. of Labor Contractor Licensing Bd.*, 199 W.Va. 613, 486 S.E.2d 782 (1997) ("The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo.*"). Moreover, in this case the circuit court's ruling turned exclusively upon an interpretation of the relevant statute, which likewise necessitates that the Court undertake plenary review. *See* syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

---

1. In an effort to protect the privacy of the juvenile involved in this case, we adhere to our customary practice of referencing the child using the last initial rather than the full surname. *See, e.g., State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 250 n. 1, 496 S.E.2d 198, 200 n. 1 (1997); *In re Tiffany Marie S.*, 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996); *In the Matter of*

*Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The circuit court had a longstanding practice, dating back at least as far as 1980, of appointing the county's magistrates to act as juvenile referees under W. Va.Code § 49–5A–1.

## III.

## DISCUSSION

■ This case calls upon the Court to determine the extent of the authority granted by W. Va.Code § 49–5–9(b). The statute provides, in the context of juvenile delinquency proceedings, as follows:

> The juvenile may move to be allowed an improvement period for a period not to exceed one year. If the court is satisfied that the best interest of the juvenile is likely to be served by an improvement period, the court may delay the adjudicatory hearing and allow a noncustodial improvement period upon terms calculated to serve the rehabilitative needs of the juvenile. At the conclusion of the improvement period, the court shall dismiss the proceeding if the terms have been fulfilled; otherwise, the court shall proceed to the adjudicatory stage. A motion for an improvement period may not be construed as an admission or be used as evidence.

W. Va.Code § 49–5–9(b). Specifically, we are required to resolve the question of whether under the statute a juvenile referee may grant an improvement period to a juvenile who is the subject of a delinquency petition.

Appellant argues that the statute is ambiguous as to the meaning of the word "court," and that such term should be construed to include juvenile referees. Appellant points to the fact that subsection (a)[3] of § 49–5–9 permits juvenile referees to conduct preliminary hearings. After isolating language

from *E.B., Jr. v. Canterbury*, 183 W.Va. 197, 200, 394 S.E.2d 892, 895 (1990), where the Court stated that "[t]he juvenile is entitled at th[e] preliminary hearing to move for an improvement period for a time period not to exceed one year," appellant asserts that the legislative intent of promoting judicial efficiency would be thwarted by not permitting juvenile referees to take the additional step of granting an improvement period following a preliminary hearing. On the other hand, the State argues that "the word 'court' clearly refers to the circuit court, as that is the only 'court' that can proceed to the adjudicatory stage." The State notes that our statement in *Canterbury* was dictum, and did not go so far as to hold that a juvenile referee has jurisdiction to grant an improvement period. We find merit in the State's arguments.

■ We begin with the premise that, as a non-constitutional officer, a juvenile referee appointed pursuant to W. Va.Code § 49–5A–1 (1975) has only those powers either expressly or impliedly conferred by statute. *Cf. Segal v. Beard*, 181 W.Va. 92, 95, 380 S.E.2d 444, 447 (1989) (noting in an analogous context that "[t]he jurisdiction of a family law master is purely statutory; he or she has no inherent powers") (citations omitted). The juvenile referee scheme was initially put in place by the Legislature in 1972, in an effort to better assist the courts of this jurisdiction in meeting the ever-expanding demands of our juvenile justice system. Circuit courts are empowered to appoint juvenile referees under authority conferred by § 49–5A–1,[4] which permits these statutory

3. Subsection (a) of W. Va.Code § 49–5–9 pertains to the conduct of preliminary hearings in juvenile cases, and provides, in part:

> (a) Following the filing of a juvenile petition, unless a preliminary hearing has previously been held in conjunction with a detention hearing with respect to the same charge contained in the petition, the circuit court or referee shall hold a preliminary hearing. In the event that the juvenile is being detained, the hearing shall be held within ten days of the time the juvenile is placed in detention unless good cause is shown for a continuance. If no preliminary hearing is held within ten days of the time the juvenile is placed in detention, the juvenile shall be released on recognizance unless the hearing has been continued for good cause. If the judge is in another county in the

circuit, the hearing may be conducted in that other county. The preliminary hearing may be waived by the juvenile, upon advice of counsel. . . .

4. Section 49–5A–1 states, in part:

> In each county, the judge or judges of the circuit court may appoint one person who is qualified by education and experience to serve as juvenile referee on a full-time or part-time basis who shall serve at the will and pleasure of the appointing court. The salary of such referee shall be fixed by the court in accordance with the rules of the supreme court of appeals, and shall be paid out of the state treasury. It shall be the duty of the referee to hold any detention hearing determined necessary pursuant to the provisions of section two

officers to conduct juvenile detention hearings, and to "perform such other duties as are assigned to him [or her] by the court to carry out the purposes of this article." The duties set forth in Article 5A pertain exclusively to detention hearings, although juvenile referees are elsewhere given authority to hear a wide range of preliminary matters. *See, e.g.,* W. Va.Code § 49–5–8(a) (authority to issue orders directing that juveniles be taken into custody); W. Va.Code § 49–5–9(a) (preliminary hearings in juvenile cases); W. Va.Code § 49–6–3(c) (emergency custody hearings). Significantly, the Legislature has made it clear that the authority of juvenile referees does not extent to making dispositive rulings on the merits of juvenile cases. *See* W. Va.Code § 49–5A–1 ("Referees shall not be permitted to conduct hearings on the merits of any case.").

 As with any matter involving statutory interpretation, our paramount goal is to ascertain and give effect to the intent of the Legislature. *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994); *Hechler v. McCuskey,* 179 W.Va. 129, 365 S.E.2d 793 (1987); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983). While there may be rare circumstances where a statute's literal meaning may be disregarded because to do so would lead to clearly unintended results,[5] courts are generally required to straightforwardly apply unambiguous statutory language. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). *See also* syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem. Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 (1996) ("If the

language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."); syl. pt. 1, *Sowa v. Huffman,* 191 W.Va. 105, 443 S.E.2d 262 (1994) (" 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' ") (citation omitted). "A statute is interpreted on the plain meaning of its provision in the statutory context, informed when necessary by the policy that the statute was designed to serve." *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 123, 468 S.E.2d 733, 738 (1996) (footnote and citation omitted).

 In interpreting a statute, the initial focus is, of course, upon the statutory language itself. *See Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.,* 206 W.Va. 691, 696, 527 S.E.2d 802, 807 (1999); *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. at 123, 468 S.E.2d at 738. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds, Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). Where the legislature does, however, declare what a particular term "means," [6] such definition is ordinarily binding upon the courts and excludes any meaning that is not stated. *See Colautti v. Franklin,* 439 U.S. 379, 393 n. 10, 99 S.Ct.

---

of this article. Each referee shall also perform such other duties as are assigned to him by the court to carry out the purposes of this article. Referees shall not be permitted to conduct hearings on the merits of any case.

. . . .

5. *See, e.g., Hutchison v. City of Huntington,* 198 W.Va. 139, 150, 479 S.E.2d 649, 660 (1996) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.") (citation and internal quotation

marks omitted); syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925) (it is "the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in the statute, when such construction would lead to injustice and absurdity").

6. By contrast, "[a] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what the term 'means.' " 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 231 (6th ed.2000).

675, 684 n. 10, 58 L.Ed.2d 596, 607 n. 10 (1979); *see also Pittsburgh Nat. Bank v. United States,* 771 F.2d 73, 75 (3rd Cir.1985).

In this case, the statute leaves no room for doubt as to what judicial officers are empowered to grant improvement periods. Section 49–5–9(b) states that "the *court* may delay the adjudicatory hearing and allow a noncustodial improvement period." (Emphasis added.) The term "court" is clearly defined in W. Va.Code § 49–1–4(3) (1998) to mean "the circuit court of the county with jurisdiction of the case or the judge thereof in vacation unless otherwise specifically provided." Thus, in the present context, the term "court" must be deemed to exclude a "referee," which is elsewhere defined in § 49–1–4.[7]

■ It is pointed out that there is one instance where the term "court" is used within Article 5 to refer to both circuit court judges and juvenile referees. West Virginia Code § 49–5–8a(a) (1998) grants both officers, as well as magistrates, the authority to conduct detention hearings, and goes on to direct that the "'court" take various actions within the course of such proceedings. While courts are generally bound by statutory definitions, there are exceptions: "[I]f the definition is arbitrary, creates obvious incongruities in the statute, defeats a major purpose of the legislation or is so discordant to common usage as to generate confusion, [the statutory definition] should not be used." 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 228–29 (6th ed.2000) (footnote omitted). With respect to § 49–5–8a(a), the Legislature clearly would not have expressly permitted a variety of judicial officers to conduct detention hearings, while still requiring that the substantive actions relating to such proceedings be undertaken exclusively by circuit court judges. In this isolated instance, an unreasonable interpretation may be avoided by giving the term "court" broader definition than would otherwise be

warranted. As we have frequently emphasized, it is the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990); *see also State ex rel. Simpkins v. Harvey,* 172 W.Va. at 321, 305 S.E.2d at 277.

■ Such logic does not apply, however, to § 49–5–9. "Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.... But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they are employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204, 1207 (1932). Here we are dealing with a carefully drafted statutory provision, which scrupulously employs the words "court" and "referee" as mutually exclusive terms. There is simply nothing to indicate that the Legislature intended these terms to have any meaning other than that prescribed by § 49–1–4. Contrary to our suggestion in *E.B., Jr. v. Canterbury,* consideration of a motion for an improvement period is as much related to the adjudicatory phase of proceedings as it is to the preliminary hearing. Subsection (b) of § 49–1–9 speaks in terms of "delay[ing] the adjudicatory hearing and allow[ing] a noncustodial improvement period," and there is no logical requirement that a motion for an improvement period must be made or ruled upon in the setting of a preliminary hearing. We therefore see no reason for taking the extraordinary step of interpreting the anomalous use of the term "court" in § 49–1–8a as evidencing legislative intent to abandon wholesale the word definitions otherwise provided by statute.[8]

---

7. The term "referee" is defined in W. Va.Code § 49–1–4(10) to mean "a juvenile referee appointed pursuant to section one, article five-a of this chapter [W. Va.Code § 49–5A–1], except that in any county which does not have a juvenile referee the judge or judges of the circuit court may designate one or more magistrates of the county to perform the functions and duties which may be performed by a referee under this chapter."

8. We note, further, that the two juxtaposed statutory sections were initially enacted at different times: Section 49–5–9 was originally enacted in 1977, *see* 1977 W. Va. Acts ch. 65, whereas § 49–5–8a was not enacted until some twenty years later, *see* 1997 W. Va. Acts ch. 54.

Consequently, the Court holds that a juvenile referee lacks jurisdiction to grant a juvenile an improvement period pursuant to W. Va.Code § 49–5–9(b); only a judge of a circuit court may exercise such statutory authority. As we have stressed on numerous occasions, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]" *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). " '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)). Thus, we find no error in the circuit court granting relief to the State prohibiting Magistrate Compton from acting outside of his statutory authority.[9]

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

---

**9.** Appellant argues further that prohibition was not the proper remedy in this case. We find no merit in this argument. *See* syl. pt. 2, in part, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984) (prohibition lies " 'to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' ") (quoting syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953)).